# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHAKA FREEMAN,<br><br>    Plaintiff,<br><br>  v.<br><br>METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO,<br><br>    Defendant. | Case No. 17 C 4409<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendant Metropolitan Water Reclamation District of Greater Chicago moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Shaka Freeman's Fourth Amended Complaint (Dkt. Nos. 91, 92, 94). For the reasons stated herein, the Defendant's Motion is granted. (Dkt. No. 97.)

### I. BACKGROUND

This marks the first time the Court has considered a fully-briefed Motion in this case, but not for lack of activity by the litigants. Plaintiff, Shaka Freeman, filed his initial, 130-page complaint in June 2017. The Court thereafter appointed a series of four attorneys to represent Freeman in his suit, but each withdrew. Freeman proceeded *pro se*. In the following months, Freeman filed four amended complaints. He sought leave to file a fifth, but, eager to move this case along, the Court denied that

leave and required Freeman to stand on the fourth amended version. That Complaint boasts eleven causes of action and is spread across three different documents on the docket. (Dkt. Nos. 91, 92, 94.) Defendant, the Metropolitan Water Reclamation District of Greater Chicago, has filed a 12(b)(6) Motion, seeking to dismiss the Complaint in full. In weighing that Motion, the Court has extracted what it could from Plaintiff's byzantine and often opaque allegations. The Court accordingly treats the following allegations as true and takes all reasonable inferences in Freeman's favor, as it must. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The Court also treats these allegations with lenity, given that Freeman is *pro se*. *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1207 (7th Cir. 1980) (citation omitted).

Freeman, an African-American man, started work in May 2015 as a Midnight Shift Treatment Plant Operator at Defendant's Stickney Plant. In August 2015, Freeman was convicted of DUI, had his license suspended, and, in accordance with Defendant's company policy, reported that change in licensure to Defendant. A month later, on September 18, 2015, Defendant terminated Freeman for "unsatisfactory performance," a generic explanation that Defendant later clarified to mean that "[Freeman] did not have a driver's license, which is a requirement to do his job." (Fourth Am. Compl.

¶¶ 39-40.) Also on September 18, 2015, Freeman voiced a "discrimination complaint" to a person he describes as the "HR Director, Employment Relations Manager" (presumably referring to someone in Defendant's Human Resources department). It is unclear which of these events—Freeman's termination or his complaint to HR—occurred first. To any extent, Defendant thereafter replaced Freeman with a non-African-American employee.

Freeman sued Defendant for a slew of discrimination claims under: 42 U.S.C. § 1981; 42 U.S.C. § 1983; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and Title VII, 42 U.S.C. § 2000e-2. Defendant moves to dismiss the Complaint in full and with prejudice.

## II. DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must state a claim that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering motions to dismiss under Rule 12(b)(6), a district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See, e.g.*, *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017).

As demonstrated by the count-by-count discussion below, the Court agrees dismissal is warranted and accordingly grants Defendant's Motion. Moreover, given that the Court has twice dismissed Freeman's complaints and four times permitted Freeman leave to amend his complaint, the Court dismisses Freeman's Complaint with prejudice, as Defendant requests.

### A. Count I (ADA Discrimination)

Count I is a claim for discrimination in violation of the ADA. To state such a claim, Freeman must allege: (1) a disability under the ADA; (2) that he is qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) that he suffered from an adverse employment action *because of his disability*. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001). Freeman does not clear this bar. He contends he suffers from alcoholism, which can, so long as it "substantially limits one or more major life activities," qualify as a disability. *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011) (quoting 42 U.S.C. § 12102(1)). Freeman fails to explain how any such substantial limitations attend his alcoholism, however. He fares better on the second element, alleging he was qualified to complete the tasks of a Plant Operator with or without any reasonable accommodation. But Freeman's limited success pleading this claim ends there, as

he never plausibly alleges the third element: the requisite causal connection between his alcoholism and his firing. *Cf. Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) ("[A] plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him but for his actual or perceived disability[.]"). He explains that Defendant purportedly fired him due to his DUI-imposed license suspension. But the fact that he lost his license after committing an alcohol-related crime does not by itself establish that Freeman cannot drive—and thus cannot work for Defendant—*because of his alcoholism*. That causal relationship is the key to Freeman's ADA claim, and yet he never alleges it. His ADA claim cannot stand. The Court accordingly dismisses Count I with prejudice.

### B. Count II (ADA Reasonable Accommodations)

In Count II, Freeman charges that Defendant failed to make reasonable accommodations for him as the ADA requires. To state this claim, Freeman must allege that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to accommodate reasonably the disability. *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). As explained above, Freeman claims he suffers from alcoholism, but fails to describe how that affliction actually disables him. *See Ames*, 629 F.3d at 670. Freeman also fails to

allege that Defendant was aware of his alcoholism, though perhaps the Court could infer Freeman related as much in his alleged conversations with Defendant concerning his DUI. To any extent, even if Freeman had plausibly alleged the first two elements of this claim, he has certainly not alleged the last, *i.e.*, that Defendant failed to accommodate his disability.

Freeman claims he asked Defendants for two possible accommodations, but the requests Freeman describes miss the mark. In the first request, Freeman allegedly asked that he be permitted to drive his personal vehicle—suspension notwithstanding—if he could acquire an "MDDP Permit." Freeman never defines said permit in his Complaint, but the Court believes he is referring to the "Monitoring-Device Driving Permit" which the Illinois Secretary of State sometimes issues to drivers with histories of drinking and driving. *See* 625 ILCS 5/6-206.1; *People ex rel. Nerheim v. 2005 Black Chevrolet Corvette*, 40 N.E.3d 160, 162-66 (Ill. App. Ct. 2015) (describing MDDP and associated statutes). Alternatively, Freeman allegedly asked that Defendant allow him to drive a "John Deer Gator" instead of a regular automobile. Freeman contends he may legally drive a Gator without a driver's license so long as he remains on private property (as in, presumably, the terrain he would have to navigate to fulfill his duties as Defendant's employee). The problem with these accommodation requests is that

they are accommodations for Freeman's *license suspension* and not for his *alcoholism*. "The law is clear that a plaintiff raising a reasonable accommodation claim under the ADA must demonstrate that the requested accommodation has some connection with the alleged disability suffered." *Wolfgram v. G4S Secure Sols. (USA), Inc.*, No. 1:18CV198, 2018 WL 5016337, at *2 (N.D. Ind. Oct. 15, 2018) (citation omitted). Though Freeman might have collected the troublesome DUI because he was intoxicated when he should not have been, Freeman simply never claims that alcoholism prevents him from driving. He thus fails to tether his disability to the accommodations he sought, so Count II can proceed no further. It is dismissed with prejudice.

### C. Count III (ADA Discrimination)

Count III is duplicative of the ADA discrimination claim in Count I and is accordingly dismissed with prejudice. *Cf. Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004) (indicating that duplicative counts should be dismissed).

### D. Count IV (ADA Retaliation)

Count IV is an ADA retaliation claim. To state this claim, Freeman must allege: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Turner v.*

*The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010). Freeman's claim stumbles at the first step. He suggests Defendant retaliated against him for his accommodation requests. *See Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018) (reciting that seeking accommodations is a statutorily protected activity). But as explained above, the accommodations he sought were not related to his alleged disability: Freeman is prevented from driving not by his alcoholism, but by his license suspension. The latter might owe in part to the former, but Freeman has not alleged how, nor has he alleged, for example, that his inability to stay sober during his shifts precludes him from driving notwithstanding his license suspension. Because Freeman never pursued any accommodation *for his disability*, he fails to make out the first element of an ADA retaliation claim. Count IV is dismissed with prejudice.

### E.  Count V (*Monell* Claim)

In Count V, Freeman pursues a § 1983 *Monell* claim. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). For this claim to survive Defendant's Motion, Freeman must allege: (1) that he suffered a deprivation of a constitutional or federal statutory right (2) as a result of an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority which (3) was the cause of his injury. *See Dixon*

*v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). It is not clear what right Freeman believes he was deprived of. But even if that were clear and plausibly alleged, Freeman fails to plead the second *Monell* element.

According to Freeman, Defendant terminated him because he is African American and yet claimed that Freeman's termination owed to 70 ILCS 2605/4.11, a provision of the Metropolitan Water Reclamation District Act which empowers Defendant's Executive Director to terminate probationary appointees in certain circumstances. This allegation appears to perplex Defendant (*see* Def.'s Mot. 7, 12, Dkt. No. 97), and understandably so: § 4.11 merely provides Defendant with certain authority vis-à-vis termination of employees; the statute does not compel any specific termination, nor does it recite a policy describing when or why certain employees should be terminated. *See* 70 ILCS 2605/4.11. Even so, Freeman contends that Defendant "us[ed] the 4.11 policy to terminate" him (Fourth Am. Compl. ¶ 99, Dkt. No. 91), and as such, Defendant maintained a policy that can support Freeman's *Monell* claim. The Court disagrees. Freeman cannot allege a "policy," for *Monell* purposes, by simply pointing to the statutory grant of authority which sets the parameters on Defendant's capacity to terminate certain employees. Nothing in Freeman's Complaint describes how Defendant allegedly went about

implementing the authority bestowed by § 4.11, whether in application to Freeman, specifically, or to employees, generally. Simply put, the allegations are silent as to the policy or practice that Defendant supposedly followed in terminating Freeman. Absent that, Freeman's *Monell* claim fails. *See, e.g.*, *Saiger v. Dart*, No. 13 C 5495, 2015 WL 1433076, at *3 (N.D. Ill. Mar. 26, 2015) (dismissing *Monell* claim where complaint failed to plead facts allowing the Court to draw the reasonable inference that defendant maintained a custom, policy, or practice that violated plaintiff's rights); *see also Thomas v. City of Markham*, No. 16 CV 08107, 2017 WL 4340182, at *4 (N.D. Ill. Sept. 29, 2017) (dismissing *Monell* claim and observing that in pursuing such claims, plaintiffs must show a policy at issue, not merely a "random event" (quoting *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010))). Count V is insufficiently pled and so is dismissed with prejudice.

### F.  Count VI (*Monell* Claim)

Count VI essentially charges the same *Monell* claim levied in Count V.  It is accordingly dismissed with prejudice.

### G.  Count VII (§ 1981 Discrimination Claim)

Count VII is a race-based discrimination claim pursued under 42 U.S.C. § 1981.  But § 1981 does not create a private right of action, so Freeman cannot use it as a vehicle for this suit.

*Campbell v. Forest Pres. Dist. of Cook Cty.*, 752 F.3d 665, 671 (7th Cir. 2014). This count is dismissed with prejudice as well.

**H. Count VIII (Title VII Disparate Treatment Claim)**

Count VIII asserts disparate treatment under both Title VII and § 1981. As above, this Count is dismissed to the extent Freeman pursues it via § 1981. To establish the Title VII component of this claim, Freeman must allege that he: (1) is a member of a protected class; (2) was performing her job satisfactorily; (3) suffered an adverse employment action; and (4) was treated less favorably than at least one similarly-situated, non-African-American colleague. *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005) (citations omitted). Freeman fails to plead the final element. He describes a few comparator employees who were either hired before he was (Fourth Am. Compl. ¶ 116, Dkt. No. 91) or hired in his stead after his termination (*id.* ¶ 80), but he nowhere alleges that any of those employees had a DUI conviction and a suspended license. That is an important omission: "To determine whether employees are similarly situated for the purposes of analyzing a Title VII retaliation claim, the employees must be directly comparable *in all material respects*." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) (internal quotation marks and citations omitted) (emphasis added). Defendants purportedly fired Freeman because his DUI conviction

precluded him from driving, as his job demanded. It is thus key to the similarly-situated analysis whether the employees retained or hired in Freeman's stead were likewise unable to drive. Freeman has not alleged as much, so he has failed to allege similarly-situated colleagues as required.

When Freeman comes closest to alleging similarly-situated employees, he recites that in an email to Defendant's "employer relations manager," Defendant's HR Director wrote: "Why is the defendant treating the plaintiff differently than other probationary employees with a suspended drivers [sic] license?" (Fourth Am. Compl. ¶ 35, Dkt. 92 (citing Email Thread 11, Ex. 22 to Pl.'s Second Am. Compl., Dkt. No. 69-22).) But: (1) the actual quote is the more generic—"Why are we treating him differently than other employees?"—and where an exhibit and the complaint conflict, the exhibit tropically controls, *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2005); (2) this question from HR is part of a larger email thread and discussion in which the participants later recite having terminated another employee who became unable to drive (Ex. 22 at 9-11); and (3) reciting an HR representative's (ostensibly soon-to-be corrected) impression is not an adequate substitute for pleading similarly-situated employees in the first instance.

Freeman fails to state a disparate treatment claim in Count VIII. That Count is dismissed with prejudice.

### I. Count IX (Grab Bag Claim)

In Count IX, Freeman alleges "RACE BASED DISCRIMINATION-RETALIATION-FOR REPORTING A CHANGE IN DRIVERS LICENSE STATUS PURSUANT TO POLICY-TITLE VII-OF THE CIVIL RIGHTS ACT OF 1964 AND 42 U.S.C. § 1981 CLAIM-DISPARATE TREATMENT." (Fourth Am. Compl. 33, Dkt. No. 91.) This count appears to rest of several different causes of action: § 1981, Title VII, and the ADA. But regardless how the Court construes this count, Freeman herein fails to state a claim. As before, the count cannot rest upon § 1981, which does not provide a private right of action. *Campbell*, 752 F.3d at 671. Nor can Freeman cannot lodge a Title VII disparate treatment claim in this count because, as noted above, such a claim would be duplicative of Count VIII.

Finally, the count fares no better even if Count IX is intended as a Title VII retaliation claim. To allege such a claim, Freeman must demonstrate that: (1) he engaged in some statutorily-protected activity; (2) he was performing his job according to his employer's legitimate expectations; (3) despite meeting those expectations, he suffered a materially adverse action; and (4) he was treated worse than a similarly-situated employee who did not engage in statutorily protected activity. *Firestine v. Parkview*

*Health Sys., Inc.*, 388 F.3d 229, 233 (7th Cir. 2004) (citations omitted).  Again, Freeman fails to allege any similarly-situated employees who were treated more favorably than he.  Absent that allegation, Freeman's retaliation claim falls apart.  Count IX is dismissed with prejudice.

### J. Count X (Another Grab Bag Claim)

Count X presents yet another amalgamation of claims.  Having recited one of Freeman's grab bag claims above, in Count IX, the Court will not waste ink doing so again.  Suffice it to say that Count X arguably contains a § 1981 claim, a Title VII retaliation claim, and a Title VII disparate impact claim.

The first two must be dismissed for the reasons already laid out above.  As for the disparate impact claim: Freeman must allege that Defendant maintained a practice or policy under which non-African Americans were treated differently.  *See Adams v. City of Indianapolis*, 742 F.3d 720, 732 (7th Cir. 2014).  But Defendant points out that as with Freeman's *Monell* claims in Count V, Freeman fails to allege the requisite practice or policy.  Once more, Freeman points to the termination procedures laid out in § 4.11.  Yet he fails to articulate any way in which Defendant's exercise of the authority bestowed upon it by that statute amounts to a "policy" which caused a disparate impact.  That failure dooms Count X.  It is dismissed with prejudice.

### K.  Count XI (Yet Another Grab Bag Claim)

Like the two counts preceding it, Freeman's final Count—Count XI—plays host to many discrete claims. They include a § 1981 claim, a § 1983 *Monell* claim, and a Title VII retaliation claim. These claims are duplicative of causes of action already considered and dismissed. Count XI is accordingly dismissed with prejudice for the same reasons recited above.

### III.  CONCLUSION

This ruling wipes out Freeman's lawsuit, but the Court does not reach this conclusion lightly. *Pro se* plaintiffs like Freeman should be afforded lenity, and this Court has allowed him that. The Court has twice dismissed Freeman's complaints in full. (Dkt Nos. 68, 90.)  Four times, the Court has permitted Freeman leave to amend. But his opportunities to cure his perennially deficient claims have run out. The Fourth Amended Complaint fails to state a claim for which relief may be granted, so the Court grants Defendant's 12(b)(6) Motion in full. Nothing remains of Freeman's case.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　　United States District Court

Dated: 11/29/2018